AUSA Terra L. Brown (312) 353-3148
AUSA Tinos Diamantatos (312) 353-4317

**FILED**

# UNITED STATES DISTRICT COURT

FEB 1 1 2008

NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

UNITED STATES OF AMERICA

v.

HOWARD BLANKENSHIP, aka "Fats"

CRIMINAL COMPLAINT

MAGISTRATE JUDGE VALDEZ

CASE NUMBER

**08CR 0123**

I, the undersigned complainant being duly sworn state the following is true and correct to the best of my knowledge and belief. On or about <u>February 20, 2007</u>, at Joliet, in <u>Will</u> County, in the <u>Northern</u> District of <u>Illinois</u>, and elsewhere, defendant did,

knowingly and intentionally distribute a controlled substance, namely, 5 grams or more of cocaine base in the form of crack cocaine, a Schedule II Narcotic Drug Controlled Substance,

in violation of Title ___21___ United States Code, Section <u>841(a)(1)</u>.

I further state that I am a <u>Special Agent with the Federal Bureau of Investigation</u> and that this complaint is based on the following facts:

See attached affidavit.

Continued on the attached sheet and made a part hereof: __X__ Yes  ____ No

_____
Signature of Complainant

Sworn to before me and subscribed in my presence,

February 11, 2008                       at         Chicago, Illinois
Date                                                City and State

MARIA VALDEZ, U.S. Magistrate Judge              _____
Name & Title of Judicial Officer                  Signature of Judicial Officer

STATE OF ILLINOIS      )
                       )
COUNTY OF COOK         )

## AFFIDAVIT

Jeremy L. Resar, being duly sworn, deposes and states as follows:

I.  **INTRODUCTION**

1.  I am a Special Agent with the Federal Bureau of Investigation (hereinafter "FBI"), United States Department of Justice, and have been so employed for approximately sixteen months. I have received specialized training in drug investigations while employed as a Special Agent. I am familiar with and have participated in all of the normal methods of investigations, including but not limited to visual surveillance, general questioning of witnesses, use of search warrants, informant and cooperating witness debriefings, pen registers, document analysis, and the utilization of undercover agents/officers. I have been personally involved in investigations of drug-related offenses involving the possession, sale, and distribution of cocaine, heroin, and crack cocaine in the south suburbs of the Chicago metropolitan area, and investigations involving the distribution of these substances by members of street gangs in the south suburbs of the Chicago metropolitan area.

2.  I am currently assigned to the South Resident Agency, which investigates, among other crimes, drug trafficking crimes in and around the south suburbs of the Chicago metropolitan area. Prior to becoming a Special Agent with the FBI, I worked as an Assistant District Attorney in Milwaukee, Wisconsin for over six and one-half years. My most recent assignment with the Milwaukee County District Attorney's Office was to the Milwaukee High Intensity Drug Trafficking Area (hereinafter "Milwaukee HIDTA") task force. As a prosecutor with Milwaukee HIDTA, I participated in long term investigations of violent criminal organizations that trafficked illegal drugs.

I drafted and reviewed search warrant applications, pen register and trap and trace applications, and applications for surreptitious GPS installations. During those investigations, I have worked to identify co-conspirators through the use of confidential informants, drug ledgers, telephone records and bills, photographs, financial records, as well as other means.

3. As a prosecutor, I also introduced interceptions from a court authorized interception of wire communications during a drug trafficking conspiracy trial. Prior to my assignment to Milwaukee HIDTA, I was assigned to the Milwaukee County District Attorney's Community Prosecution Unit where I worked with officers from the Milwaukee Police Department to investigate street level drug trafficking. In total, while employed with the Milwaukee County District Attorney's Office, I prosecuted several hundred drug cases. Through this experience and my experience as a Special Agent with the FBI, I am familiar with the methods in which drug traffickers conduct their business, including, but not limited to, their: (a) methods of importing and distributing illegal drugs; (b) use of cellular telephones;(c) use of homes and businesses to store illegal drugs and conduct meetings; and (d) use of code words to conduct illegal drug transactions.

4. The information contained in this Affidavit is based on my conversations with and review of reports prepared by agents in the FBI, as well as other law enforcement agents and officers; the results of physical surveillance; information provided by cooperating witnesses; law enforcement's interviews of witnesses; and law enforcement's review of recordings of consensually recorded conversations and conversations intercepted pursuant to Court orders authorizing the interception of wire communications. Since this Affidavit is being submitted for the limited purpose of establishing probable cause as set forth herein, I have not included each and every fact known to me concerning this investigation.

5.   In many of the consensually recorded calls, coded language was used to conceal the true nature of the telephone calls. At various points in this Affidavit, I have placed in brackets or parenthesis my understanding of what was being said during these calls. My understanding is based upon the contents and contexts of the conversations, my experience as a law enforcement officer, the experience of other law enforcement agents and officers in this investigation, and information provided by cooperating sources. The times listed for these calls are approximate. Finally, the summaries below do not include all potentially criminal calls intercepted during the period of interception, or all statements or topics covered during the course of the intercepted conversations. They do not represent finalized transcripts and may not represent the entire conversation that occurred between the identified individuals.

6.   This affidavit is made for the purpose of establishing probable cause in support of a criminal complaint charging HOWARD BLANKENSHIP with knowingly and intentionally distributing a controlled substance, namely 5 grams or more of mixtures and substances containing cocaine base in the form of crack cocaine, a Schedule II Narcotic Drug Controlled Substance, in violation of Title 21, United States Code, Section 841(a)(1).

7.   In February 2007, a confidential source (hereinafter "CS-2") identified HOWARD BLANKENSHIP as a distributor of crack cocaine in the Joliet, Illinois area. CS-2 provided credible, reliable, and timely information to the FBI from approximately February 2007 until November 2007. Prior to that time, CS-2 had been cooperating with JPD since November 2006, following his/her arrest for a narcotics and firearms offense. CS-2 cooperated with the FBI in hopes of receiving a reduced sentence on the state charges to which he entered a plea of guilty. CS-2 has entered a plea of guilty to those charges and has not yet been sentenced. CS-2 has approximately eight

misdemeanor convictions for various offenses, including possession of cannabis. The FBI and JPD did not pay CS-2 for his/her cooperation.

8. CS-2 has known BLAKENSHIP, also known as "Fats", since at least 2004. CS-2 admitted that between 2001 and 2004, CS-2 sold wholesale quantities of cocaine to BLANKENSHIP.

9. On or about February 20, 2007, CS-2 met with agents and detectives with the Joliet Police Department (hereinafter "JPD") at a prearranged location for the purpose of purchasing one ounce of crack cocaine for $900 from BLANKENSHIP. CS-2 had previously, at the direction of the FBI, discussed this purchase with BLANKENSHIP in unrecorded phone calls.

10. On or about February 20, 2007, at approximately 2:47 p.m. and 2:53 p.m., CS-2 placed consensually recorded telephone calls to BLANKENSHIP at (708) 473-2686. Both times CS-2 got BLANKENSHIP's voicemail.

11. At approximately 3:04 p.m., CS-2 received an incoming call from BLANKENSHIP, who was using telephone number (708) 473-2686. The call was consensually recorded. During the call, CS-2 told BLANKENSHIP that CS-2 wanted to "come full circle on that thing [the purchase of crack cocaine] we talked about." CS-2 told BLANKENSHIP that CS-2 needed to borrow a car, and that CS-2 would call BLANKENSHIP back after CS-2 got the car.

12. At approximately 3:27 p.m. agents searched CS-2 and CS-2's vehicle for the presence of drugs, money or other contraband, with negative results.

13. At approximately 3:30 p.m., 3:33 p.m., and 3:39 p.m., CS-2 made consensually recorded phone calls to BLANKENSHIP at telephone number (708) 473-2686. Each time, CS-2 reached BLANKENSHIP's voicemail.

14. At approximately 3:43 p.m., CS-2 received an incoming telephone call from BLANKENSHIP, who was using telephone number (708) 473-2686. The call was consensually recorded. During the call, CS-2 told BLANKENSHIP that CS-2 had borrowed a car. CS-2 and BLANKENSHIP agreed to meet at a location near BLANKENSHIP's mother's house at 816 N. Center Street, Joliet, Illinois.

15. At the conclusion of this telephone call, agents provided CS-2 with $900 in United States Currency. Agents then instructed CS-2 to meet BLANKENSHIP at the agreed upon location and purchase the one ounce of crack cocaine from BLANKENSHIP. Agents provided CS-2 with a transmitter and recording device. Agents maintained surveillance of CS-2 as CS-2 drove to 816 N. Center Street in Joliet.

16. At approximately 4:15 p.m., while enroute to the previously agreed upon meeting location, CS-2 received an incoming call from BLANKENSHIP, who was using telephone number (708) 473-2686. This call was consensually recorded. During the call, BLANKENSHIP instructed CS-2 to meet BLANKENSHIP at the Citgo gas station, located at 609 Ruby Street, Joliet, Illinois. This call was consensually recorded.

17. At approximately 4:18 p.m., agents observed CS-2 pull into the parking lot of the Citgo gas station. Agents saw CS-2 exit his/her vehicle and enter the front passenger seat of a small blue Chevy 4-door sedan driven by BLANKENSHIP. Shortly thereafter, CS-2 exited BLANKENSHIP's vehicle and returned to CS-2's vehicle. Agents maintained surveillance of CS-2, as CS-2 drove away from the area to a prearranged meet location.

18. Upon arrival at the location, agents retrieved from CS-2 the recording device and collected a clear plastic bag containing approximately one ounce of an off-white chunky substance,

believed to be crack cocaine, which CS-2 purchased from BLANKENSHIP. Agents also collected $200 in United States Currency. Agents searched CS-2 for money, drugs or other contraband, with negative results.

19. Agents debriefed CS-2 regarding the transaction. CS-2 explained that he/she was uncomfortable paying the full $900 for the cocaine because CS-2 thought BLANKENSHIP would find it unusual for CS-2 to have that much money at one time. CS-2 told BLANKENSHIP that he only had $700 and BLANKENSHIP offered to "front" the remaining $200 of crack cocaine to CS-2. CS-2 stated that BLANKENSHIP provided CS-2 with the suspected one ounce of crack cocaine and CS-2 provided BLANKENSHIP with $700 in United States Currency for that crack cocaine. I have reviewed the recording from the body recording device, and found the conversation between CS-2 and BLANKENSHIP to be consistent with CS-2's account of the conversation.

20. The DEA North Central Laboratory analyzed the suspected crack cocaine, and found it to be 26.9 grams of mixtures and substances containing cocaine base. The substance also contained sodium bicarbonate. Based on the investigation as a whole, my experience, and the experience of others with whom I have worked, I believe that the cocaine base HOWARD BLAKENSHIP sold to CS-2 on February 20, 2007 was in the form of crack cocaine.

21. Based on the foregoing, I believe there exists probable cause to believe that HOWARD BLANKENSHIP knowingly and intentionally distributed a controlled substance, namely 5 grams or more of cocaine base in the form of crack cocaine, a Schedule II Narcotic Drug Controlled Substance, in violation of Title 21, United States Code, Section 841(a)(1).

JEREMY RESAR
Special Agent
Federal Bureau of Investigation

SUBSCRIBED TO AND SWORN BEFORE ME
this 11th day of February, 2008

THE HONORABLE MARIA VALDEZ
UNITED STATES MAGISTRATE JUDGE